**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| DWAYNE BROWN,<br><br>   Plaintiff,<br><br>v.<br><br>PATROLMAN SAMUEL WATERS, in his official and individual capacity, and CITY OF WILMINGTON,<br><br>   Defendants. | Civil Action No. 21-1493-RGA |

<u>MEMORANDUM ORDER</u>

Before me is Defendant City of Wilmington's ("the City's") motion to dismiss. (D.I. 38). I have considered the parties' briefing. (D.I. 39, 46, 48). For the reasons set forth below, the City's motion is GRANTED.

**I.   BACKGROUND**[1]

On September 21, 2021, Plaintiff Dwayne Brown went to a convenience store in Wilmington, Delaware. (D.I. 27 ¶ 17).[2] While Plaintiff was inside the store, Defendant Samuel Waters entered, grabbed Plaintiff's right wrist and put Plaintiff's right hand on the plexiglass by the cashier. (*Id.* ¶ 20). Waters then grabbed the back of Plaintiff's head and "banged it twice into the plexiglass," called Plaintiff the N–word, "took [Plaintiff] down to the floor," and "pulled [Plaintiff] out of the building and on to the sidewalk where he continued to use unnecessary and excessive force." (*Id.* ¶¶ 20–21). Plaintiff is a black man. Waters is a white man. (*Id.* ¶ 2).

---

[1] I summarize the relevant factual background in the light most favorable to Plaintiff.

[2] Plaintiff filed his original complaint on October 25, 2021. (D.I. 1). I cite to the Second Amended Complaint, which was filed on September 21, 2023. (D.I. 27).

Plaintiff sued Waters, asserting excessive force, equal protection, assault, battery, and reckless/wanton conduct claims. (*Id.* ¶¶ 46–73). The case was stayed on April 18, 2022, during the pendency of criminal proceedings against Waters. (D.I. 18). The Second Amended Complaint added the City as a Defendant, asserting a *Monell* claim under 42 U.S.C. § 1983 against it. (D.I. 27 ¶¶ 74–86).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Federal Rule of Civil Procedure 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads

factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III.   DISCUSSION

As an initial matter, Plaintiff argues that the City's opening brief relies on exhibits that I should not consider on a Rule 12(b)(6) motion. (D.I. 46 at 6 n.1). I think the exhibits at issue—trial transcript excerpts and a use of force policy—are unnecessary for the purpose of resolving the motion to dismiss, and, in the case of the trial transcripts, something I clearly cannot consider at this stage of the case. I do not consider the exhibits.

#### A. Constitutional Violation

The Second Amended Complaint alleges that Waters violated the Fourth and Fourteenth Amendments (D.I. 27 ¶¶ 46–54), and that the City violated the Fourth, Fifth, Eighth, and Fourteenth Amendments (*id.* ¶ 81). The City argues "there can be no derivative municipal claim under *Monell*" "if there is no constitutional violation in the first instance." (D.I. 39 at 5 (citing *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013))). The City contends that the Second Amended Complaint fails to allege plausible violations of Plaintiff's Fifth, Eighth, and Fourteenth Amendment rights. (*Id.* at 5–6). The City thus argues that Plaintiff's *Monell* claim against the City fails to the extent that it relies on violations of those amendments. (*Id.* at 6).

#### 1. Fifth and Eighth Amendments

The City argues that the Second Amended Complaint fails to state a Fifth Amendment claim because the Fifth Amendment only protects plaintiffs against federal actors, not state

3

actors. (D.I. 39 at 6). The City also argues that the Second Amended Complaint fails to state an Eighth Amendment claim because Plaintiff does not allege that he was convicted and incarcerated at the time of Waters's actions. (*Id.*).

Plaintiff does not address either argument. (*See generally* D.I. 46). He has therefore forfeited any argument that he has stated a claim that the City violated his Fifth or Eighth Amendment rights. *See In re: Niaspan Antitrust Litig.*, 67 F.4th 118, 135 (3d Cir. 2023) (failing to raise arguments at the appropriate time forfeits them); *Kiger v. Mollenkopf*, 2021 WL 5299581, at *2 n.2 (D. Del. Nov. 15, 2021) (failure to respond to an argument in a responsive brief "waive[s]" it). I conclude that the Second Amended Complaint fails to state a *Monell* claim to the extent that the claim relies on purported violations of the Fifth and Eighth Amendments.

### 2. Fourteenth Amendment

The City argues that the Second Amended Complaint fails to state an equal protection claim because it does not allege facts showing Plaintiff was treated differently than similarly situated individuals outside of his protected class, and it does not allege facts showing Waters was motivated by an intent to discriminate due to Plaintiff's race. (D.I. 39 at 7). The City contends that "the use of racially discriminatory statements, racial slurs and epithets, or racially derogatory language, without more, does not establish liability under § 1983." (*Id.* at 8). The City further contends that the Second Amended Complaint describes "only one other arrest by Waters, but does not identify the suspect's race, allege selective treatment on the basis of race and/or plead any facts giving rise to an inference of racial discrimination as to that arrest." (*Id.*).

Plaintiff argues that the allegations in the Second Amended Complaint are sufficient to state an equal protection claim against the City. (D.I. 46 at 18). Plaintiff contends the Second Amended Complaint contains factual support for the theory that Plaintiff was treated differently

than other similarly situated individuals outside of his protected class. (*Id.* at 17–18 (citing D.I. 27 ¶ 2)). Plaintiff also quotes the Second Amended Complaint, which alleges that Waters called Plaintiff the N–word while assaulting him. (*Id.* at 18 (quoting D.I. 27 ¶¶ 20, 51–52)).

I agree that the Second Amended Complaint fails to state an equal protection claim. On its own, evidence of Waters calling Plaintiff the N–word is insufficient to raise an equal protection claim. *See Mugavero v. Town of Kearny*, 2013 WL 3930120, at *3 (D.N.J. July 30, 2013) (stating "racially discriminatory statements, racial slurs, and racial epithets, on their own, fail to establish liability under section 1983"). Plaintiff's claim covers more than just racial slurs, however, as the Second Amended Complaint alleges that Waters said the N–word while using excessive and unnecessary force. *See Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999) ("We hold today that an officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation."); *see also Salley v. Pa. Dep't of Corr.*, 181 F. App'x 258, 266 (3d Cir. 2006) ("[T]he use of racial slurs without accompanying harassment or deprivation of a right is not a violation of equal protection."). Thus, Plaintiff may be able to state a Fourteenth Amendment violation. So far, though, he has not. The Second Amended Complaint lacks factual support for Plaintiff's claim that similarly situated individuals outside of his protected class were treated differently. The Second Amended Complaint alleges:

> Moreover, there have been past instances in Mr. Brown's neighborhood of Ptlm. Waters' inappropriate behavior in dealing with other members of the Black community.
>
> . . .
>
> Allegedly, Ptlm. Waters would not have used excessive force on a similarly situated white person and any nonracial reasons offered for this are expected to be a pretext for intentional racial discrimination.

5

(D.I. 27 ¶ 2). These allegations lack factual content. I think they are therefore insufficient to state that similarly situated individuals outside of Plaintiff's protected class were treated differently. *See Knight v. Carmike Cinemas*, 2011 WL 3665379, at *10 (D. Del. Aug. 22, 2011) (dismissing an equal protection claim where the plaintiff "failed to allege facts to suggest that Defendants treated him differently than those similarly situated based on his race"); *Martin v. Monroe Twp.*, 2011 WL 255826, at *8 (D.N.J. Jan. 25, 2011) ("Because the plaintiff has not identified any comparator, his equal protection claim fails.").

I conclude that the Second Amended Complaint fails to state an equal protection claim.

## B. Municipal Liability

The Second Amended Complaint pleads various theories as part of Plaintiff's *Monell* claim, including an unconstitutional policy, practice, or custom, a failure to train, ratification, and respondeat superior. (D.I. 27 ¶¶ 74–86). The City does not contest that Plaintiff's Second Amended Complaint states a Fourth Amendment excessive force claim against Waters. (*See* D.I. 48 at 6). I consider whether Plaintiff sufficiently pleads his theories for *Monell* liability.

### 1. Respondeat Superior, Failure to Train, and Breach of Duty

The City argues that "a municipality cannot be held liable for a constitutional violation under a theory of respondeat superior." (D.I. 39 at 11). The City argues it cannot be liable under a ratification theory either, as the Second Amended Complaint does not plead any facts suggesting that "an authorized policymaker of the City approved of both Waters' actions during Plaintiff's arrest and the alleged unconstitutional basis for those actions." (*Id.* at 18). Plaintiff does not address respondeat superior or ratification in his brief. (*See generally* D.I. 46). He has therefore forfeited any arguments in support of those theories. *See Niaspan Antitrust Litig.*, 67 F.4th at 135; *Kiger*, 2021 WL 5299581, at *2 n.2. I agree with the City that the Second

6

Amended Complaint fails to state a *Monell* claim based on a ratification or a respondeat superior theory.

The City argues that the Second Amended Complaint lacks factual support for Plaintiff's failure to train theory as well. (D.I. 39 at 15). The City contends the Second Amended Complaint does not include facts about "instances cited of excessive force by other [Wilmington Police Department] officers" or "any incidents involving improper arrest procedures/techniques, internal affairs procedures and/or malicious prosecution whatsoever." (*Id.* at 16). Plaintiff's brief only mentions his failure to train theory in a footnote. (D.I. 46 at 21 n.3). The footnote quotes the Second Amended Complaint but does not substantively address the City's argument. I think Plaintiff has forfeited his failure to train theory.

Nor does Plaintiff's brief respond to the City's argument that a breach of a duty "to provide officers who comply with the constitutions and laws of the United States of America and the State of Delaware" is not a cognizable *Monell* claim. (D.I. 39 at 19 (quoting D.I. 27 ¶ 84); *see also* D.I. 46 at 14–22). The City argues that even if Waters should have been placed on administrative leave after an excessive force incident on September 12, 2021 (D.I. 27 ¶¶ 11–15, 75–78), the Wilmington Police Department's failure to do that is grounded in negligence, not constitutional law, and the City is immune from negligence claims. (D.I. 39 at 19). Plaintiff's brief does not discuss his breach of duty theory. (*See generally* D.I. 46). I think Plaintiff has forfeited his breach of duty argument, too.

### 2. Policy, Practice, or Custom

The City argues that it has not adopted an unconstitutional policy, practice, or custom. (D.I. 39 at 11).

The City contends that the Second Amended Complaint does not cite to policy language or name any policymakers with final authority. (*Id.* at 12). The City contends that the Second Amended Complaint merely cites to the Wilmington Police Department's use of force policy, which prohibits the conduct at issue. (*Id.*). The City argues that an employee's deviation from an official policy cannot establish a causal link between a municipality and a constitutional harm. (*Id.* at 13).

I agree with the City that the Second Amended Complaint lacks factual support for Plaintiff's policy theory. As the City points out, the Second Amended Complaint does not refer to any specific policy language. The Second Amended Complaint does not plead any facts about policymakers either. (*See* D.I. 27 ¶ 22 ("After an audit of his body worn camera usage by WPD, it was determined that he frequently did not power on his body worn camera, in violation of WPD policy."); *id.* ¶ 78 ("Ptlm Waters could not have caused harm to Plaintiff on September 21, 2021 if the City of Wilmington had followed proper policy and procedure.")). The only other reference to "policy" is in the following paragraph:

> The City of Wilmington repeatedly and knowingly failed to discipline its officers properly with respect to violations of the law of the State of Delaware, the Constitution of the United States, and its own policies on use of force, internal affairs procedures, and arrest procedures, creating a pattern, policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is tolerated, condoned, and accepted by The City of Wilmington, amounting to deliberate indifference to and reckless disregard of the welfare of the public at large, including the Plaintiff.

(*Id.* ¶ 83(c)). I think the allegations in the Second Amended Complaint are insufficient to state a *Monell* claim based on a City policy.

The City contends that the Second Amended Complaint lacks factual support for an unconstitutional custom or practice as well. (D.I. 39 at 13). The City contends that the Second Amended Complaint only references two arrests, which is insufficient to establish a pattern. (*Id.*

8

at 13–14). The City further argues that to the extent Plaintiff alleges the City failed to adequately investigate Waters's use of excessive force during the earlier September 12th arrest, "this lone incident is insufficient evidence of an unconstitutional custom or practice." (*Id.* at 14). The City contends that Plaintiff does not plead any facts to support the theory that Waters had a "history of maliciously prosecuting innocent individuals," nor does Plaintiff plead facts to support his theory that the City had a custom or practice of failing to track police officer performance and/or exonerating "rogue" officers without cause. (*Id.* at 15 (quoting D.I. 27 ¶ 80)).

In response, Plaintiff quotes the portion of the Second Amended Complaint that sets forth his allegations regarding the City's policies, practices, and/or customs. (D.I. 46 at 19–20 (citing D.I. 27 ¶ 82)). Plaintiff argues, "At this stage of the action, the Court should accept [Plaintiff's] allegations as true and view those allegations in the light most favorable to him." (*Id.* at 20).

Although I accept the allegations in the Second Amended Complaint as true at this stage, I agree with the City that the Second Amended Complaint lacks factual support for Plaintiff's custom or practice theory. The Second Amended Complaint alleges that Waters had a "history of maliciously prosecuting innocent individuals" and that the City had a custom or practice of failing to track police officer performance and/or exonerating "rogue" officers without cause. (D.I. 27 ¶¶ 80, 82). Plaintiff, however, does not plead any facts to support these theories. Likewise, Plaintiff's references to two arrests (Waters's arrests of Plaintiff and of another person nine days earlier) are insufficient to establish a custom or practice for the purpose of a *Monell* claim. *See, e.g.*, *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Groman v. Twp.*

9

*of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) ("[T]his case standing alone does not provide sufficient proof of a policy or custom to satisfy the dictates of § 1983."); *Siceloff v. Twp. of West Deer*, 2013 WL 3989427, at *12 (W.D. Pa. Aug. 2, 2013) (stating that "occasional violations generally do not rise to the level of a policy or custom").

I thus conclude that the Second Amended Complaint fails to state a *Monell* claim against the City. The City's motion to dismiss is GRANTED.

### C. Amendment of Complaint

Plaintiff requests leave to file another amended complaint in the event that the City's motion is granted. (D.I. 46 at 21). Plaintiff notes that while he has already filed the Second Amended Complaint, that complaint is the first time Plaintiff has asserted any claims against the City. (*Id.* at 22 n.4). The City asks that Plaintiff's request be denied. (D.I. 48 at 10). The City contends that a third amendment would be "futile and inequitable." (*Id.*).

I will grant Plaintiff's request for leave to amend as it appears possible that he can successfully re-plead a *Monell* claim against the City.

### IV. CONCLUSION

For the foregoing reasons, the City's motion to dismiss Plaintiff's *Monell* claim (D.I. 38) is GRANTED. Plaintiff's *Monell* claim (Count VI of the Second Amended Complaint) is DISMISSED without prejudice. Plaintiff is given leave to file an amended complaint so long as he does so within twenty days of the date of this Memorandum Order.

IT IS SO ORDERED.

Entered this 3rd day of September, 2024.

/s/ Richard G. Andrews
United States District Judge