### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

DWAYNE BROWN,

      Plaintiffs,

    v.

PATROLMAN SAMUEL WATERS, in his
official and individual capacity, and CITY
OF WILMINGTON,

      Defendants.

Civil Action No. 21-1493-RGA

<u>MEMORANDUM ORDER</u>

Before me is Defendant City of Wilmington's ("the City's") motion to dismiss. (D.I. 56).

I have considered the parties' briefing. (D.I. 57, 65, 69). For the reasons set forth below, the

City's motion is GRANTED and Count V of the Third Amended Complaint (D.I. 56) is

DISMISSED WITH PREJUDICE.

### I.  BACKGROUND

I summarized the factual background in my previous order:

On September 21, 2021, Plaintiff Dwayne Brown went to a convenience store in
Wilmington, Delaware. (D.I. 27 ¶ 17). [] While Plaintiff was inside the store,
Defendant Samuel Waters entered, grabbed Plaintiff's right wrist and put Plaintiff's
right hand on the plexiglass by the cashier. (*Id.* ¶ 20). Waters then grabbed the
back of Plaintiff's head and "banged it twice into the plexiglass," called Plaintiff
the N–word, "took [Plaintiff] down to the floor," and "pulled [Plaintiff] out of the
building and on to the sidewalk where he continued to use unnecessary and
excessive force." (*Id.* ¶¶ 20–21). Plaintiff is a black man. Waters is a white man.
(*Id.* ¶ 2).

Plaintiff sued Waters, asserting excessive force, equal protection, assault, battery,
and reckless/wanton conduct claims. (*Id.* ¶¶ 46–73). The case was stayed on April
18, 2022, during the pendency of criminal proceedings against Waters. (D.I. 18).
The Second Amended Complaint added the City as a Defendant, asserting a *Monell*
claim under 42 U.S.C. § 1983 against it. (D.I. 27 ¶¶ 74–86).

1

(D.I. 51 at 1). The City filed a motion to dismiss Plaintiff's *Monell* claim (D.I. 38), which I granted without prejudice. (D.I. 51 at 10).

Plaintiff has since filed a Third Amended Complaint (D.I. 56) ("Complaint"), which again asserts a *Monell* claim under 42 U.S.C. § 1983 against the City. (*Id.* ¶¶ 69–97). The City has filed another motion to dismiss. (D.I. 56).

## II.    LEGAL STANDARD

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

2

## III.  DISCUSSION

Section 1983 provides a cause of action for constitutional violations committed under color of state law.  A municipality may itself be held liable under § 1983 when a municipal policy or custom caused the constitutional violation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978).  "To establish liability based on a municipal policy or custom, the plaintiff must demonstrate the municipality was 'the moving force behind the injury alleged' by showing that there was a 'direct causal link between the municipal action and the deprivation of federal rights.'" *Stanley v. City of Pittsburgh*, 467 F. App'x 132, 133 (3d Cir. 2012) (cleaned up) (quoting *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1997)).  "A plaintiff must also establish that the municipal decision 'reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.'"  *Id.* (quoting *Brown,* 520 U.S. at 411).  This is a "stringent standard of fault. . . ."  *Id.* (quoting *Brown,* 520 U.S. at 410).

Here, Plaintiff's *Monell* claim rests on several theories, including (i) *respondeat superior*, (ii) breach of duty, (iii) municipal policy, (iv) failure to train, (v) ratification, and (vi) municipal custom or practice.  (D.I. ¶¶ 69–97).  I find that none of Plaintiff's theories state a *Monell* claim.[1]

### A.  *Respondeat Superior* Does Not Apply to *Monell* Claims.

Plaintiff's Complaint states, "The City is responsible for the actions of Patrolman Waters at all times relevant to this complaint under the doctrine of respondeat superior."  (D.I. 53 ¶ 70).

---

[1] The City's reply brief argues that Plaintiff fails to state a *Monell* claim because he has not plausibly identified a constitutional violation.  (D.I. 69 at 4–6, 9–10).  Because the City raises this argument for the first time in this round of briefing in its reply brief, it is likely forfeited.  *See In re Niaspan Antitrust Litig.*, 67 F.4th 118, 135 (3d Cir. 2023) ("Arguments raised for the first time before a district court in a reply brief are deemed forfeited.").  On the other hand, the City has made this argument before, albeit in response to a previous version of the Complaint.  (D.I. 39 at 5–9).  Determining whether this argument is forfeited is unnecessary, however, as the City's remaining arguments are enough to decide the motion.

However, "[a] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 197 (3d Cir. 2018) (quoting *Monell*, 436 U.S. at 691). Instead, to be held liable under *Monell*, the municipality must be the "moving force behind the injury alleged. . . ." *Stanley*, 467 F. App'x at 133. To the extent that Plaintiff's *Monell* claim relies on a *respondeat superior* theory, it is dismissed.

### B. Plaintiff Has Forfeited His Breach-of-Duty Argument.

The Complaint alleges, "The City of Wilmington is liable to Plaintiff because it breached its duty to provide officers who comply with the constitutions and laws of the United States of America and the State of Delaware." (D.I. 53 ¶ 95). The City responds that a breach-of-duty claim is not cognizable under *Monell*. (D.I. 57 at 17). Plaintiff's brief does not respond to this argument, so I consider it forfeited. To the extent that Plaintiff's *Monell* claim relies on a breach-of-duty theory, it is dismissed.

### C. The Complaint Does Not Plausibly Plead *Monell* Liability Under a Policy Theory.

Plaintiff argues that the City is subject to *Monell* liability because its municipal policy or policies caused a constitutional violation. (D.I. 65 at 21–25). I disagree.

*Monell* "created a two-path track to municipal liability, depending on whether a § 1983 claim is premised on a municipal policy or custom." *McTernan v. City of York, PA*, 564 F.3d 636, 657 (3d Cir. 2009) (cleaned up). A municipal "[p]olicy is made when a decisionmaker possessing final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict." *Id.* at 658.

In my previous order granting the City's motion to dismiss the *Monell* claim in the Second Amended Complaint, I agreed with the City that the Second Amended Complaint "lack[ed] factual

4

support for Plaintiff's policy theory." (D.I. 51 at 8). In making that decision, I noted two facts: the Second Amended Complaint "[did] not refer to any specific policy language," and it "[did] not plead any facts about policymakers either." (*Id.*). The same considerations hold here. Nowhere in the Complaint does Plaintiff cite to specific policy language or identify an "official proclamation, policy, or edict." *McTernan*, 564 F.3d at 658. The only "policymaker" the Complaint identifies is "the Mayor of the City[,]" who passed a policy "which does not address the use of excessive force by police officers." (D.I. 53 ¶ 81). It is not clear what policy the Complaint is referring to—there are many policies that do not address use of excessive force by police officers—and the Complaint itself refers to an earlier investigation of Patrolman Waters due to his use of excessive force. (*Id.* ¶¶ 77–78). Furthermore, Plaintiff does not allege that the Mayor is a final policymaker for the purposes of Plaintiff's *Monell* claim. "The fact that a particular official . . . has discretion in the exercise of particular functions does not, without more, give rise to municipal liability. . . . The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–83 (1986) (citations omitted). As the City points out, "the Mayor of the City of Wilmington does not have final policymaking authority as to WPD policies and directives as these must be approved by the City's Administrative Board." (D.I. 57 at 10) (citing 1 Wilm. C. § 4-200(1)). Plaintiff does not respond to this argument. I find that the Complaint does not plausibly plead *Monell* liability under a policy theory. Plaintiff's *Monell* claim is dismissed to the extent it relies on that theory.

**D. The Complaint Does Not Plausibly Plead *Monell* Liability Under a Failure-to-Train Theory.**

Plaintiff argues that the City is subject to *Monell* liability because it "failed to discipline its officers regarding the use of force, internal affairs procedures, and arrest procedures." (D.I. 65 at 24) (cleaned up) (citing D.I. 53 ¶ 93). I disagree.

Failure-to-train theories are a form of the "policy" path to *Monell* liability. "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a 'policy' as defined by [the Supreme Court's] prior cases—can a city be liable for such a failure under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). The same "deliberate indifference" standard applies, as the Third Circuit explained in *Thomas v. Cumberland County*:

> Where the policy concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact. Additionally, the identified deficiency in a city's training program must be closely related to the ultimate injury; or in other words, the deficiency in training must have actually caused the constitutional violation.

749 F.3d 217, 222 (3d Cir. 2014) (cleaned up). In determining whether the "deficiency in training [] actually caused the constitutional violation[,]" the inquiry must "focus[] on whether the injury could have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Id.* at 226.

Here, the Complaint does not identify any deficiencies in the City's training policy that would amount to deliberate indifference or that would be closely related to Plaintiff's injury. The allegations in the Complaint regarding those deficiencies merely restate claim elements and are therefore conclusory. (D.I. 53 ¶ 88 ("The City of Wilmington failed to train and supervise police officers adequately regarding proper arrest procedures and techniques, use of force, and internal affairs procedures, and such failure to train had [the] consequence of leading to constitutional

6

violations amounting to deliberate indifference and reckless disregard of the welfare of the public at large, including Plaintiff."); ¶ 89 ("Defendant, City failed to train Defendant, Waters in the proper manner in which to investigate and arrest an individual absent using excessive force."); ¶ 92 ("The City of Wilmington failed to monitor and evaluate adequately the performance of its officers . . ., amounting to deliberate indifference to and reckless disregard of the welfare of the public at large, including Plaintiff.")).   None of these allegations identify what exactly the deficiencies in the City's policies were, let alone reasonably support the inference that any deficiencies in the City's policy were the result of deliberate indifference. I find that the Complaint does not plausibly plead *Monell* liability under a failure-to-train theory.  Plaintiff's *Monell* claim is dismissed to the extent it relies on that theory.

### E.  The Complaint Does Not Plausibly Plead *Monell* Liability Under a Ratification Theory.

Plaintiff argues that the City is subject to *Monell* liability because it "allow[ed] . . . its police officers to maliciously prosecute innocent individuals" and "exonerat[ed] rogue police officers without cause. . . ." (D.I. 65 at 23–24) (citing D.I. 53 ¶ 85). The Complaint alleges, "The City of Wilmington allowed its officers to engage in conduct that violates the constitutional rights of persons subject to arrest . . ., creating an atmosphere where such unconstitutional behavior is ratified, tolerated and condoned . . . ." (D.I. 53 ¶ 94). To the extent that Plaintiff asserts *Monell* liability under a ratification theory, however, I disagree.

Like failure-to-train, ratification is another form of "policy" liability under *Monell*.  *See Biondino v. Bucks Cnty. Tech. Sch. Auth.*, 765 F. Supp. 3d 454, 460 (E.D. Pa. 2025) (citing *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005)).  Ratification "occurs only 'when a subordinate's decision is subject to review by the municipality's authorized policymakers [because] they have retained the authority to measure the official's conduct for conformance with

7

their policies." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 264 (3d Cir. 2010) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion)).

Here, the Complaint offers no factual support for the proposition that one of the City's authorized policymakers approved of Defendant Waters' conduct. The Complaint's assertion that "the authorized policy maker of Defendant, City approved of Defendant Waters' actions" (D.I. 53 ¶ 73) only recites the elements of a ratification claim and is therefore conclusory. In fact, the Complaint alleges that Patrolman Waters was placed "under investigation for excessive force against another individual" (*id.* ¶ 77), which would contradict the claim that the City ratified his conduct. I find that the Complaint does not plausibly plead *Monell* liability under a ratification theory. Plaintiff's *Monell* claim is dismissed to the extent it relies on that theory.

### F. The Complaint Does Not Plausibly Plead *Monell* Liability Under a Custom or Practice Theory.

Plaintiff argues that the City is subject to *Monell* liability under the theory that it had a "custom or practice" that caused a constitutional violation. (D.I. 65 at 23). Under *Monell*, a "custom" is "[a] course of conduct" that is "so permanently and well-settled as to virtually constitute law." *McTernan*, 564 F.3d at 658.

My previous order found that the Second Amended Complaint "lack[ed] factual support for Plaintiff's custom or practice theory." (D.I. 51 at 9). Relying on *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) and *Growman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995), I concluded that the two arrests cited by the Second Amended Complaint were "insufficient to establish a custom or practice for the purpose of a *Monell* claim." (D.I. 51 at 9). The same considerations hold here. Apart from those two arrests (D.I. 53 ¶¶ 78), the Complaint contains only one new allegation: that "excessive force [] has been routinely exacted by Defendant, Waters as was well as other members of the Wilmington Police Department in effectuating arrests,

8

including . . . a force-wide epidemic of using excessive force to effectuate arrests beyond that which is reasonably required." (D.I. 53 ¶ 87). But the Complaint offers no facts supporting this allegation, rendering it conclusory. *See Ashcroft*, 556 U.S. at 680–681. I find that the Complaint does not plausibly plead *Monell* liability under a custom or practice theory. Plaintiff's *Monell* claim is dismissed to the extent it relies on that theory.

### G. Plaintiff May Not Amend His Complaint.

Plaintiff has not sought leave to amend. I also find, based on the similarity between the Second and Third Amended Complaint, that further amendment would be futile. Therefore, the City's motion is granted with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion (D.I. 56) is GRANTED. Plaintiff's *Monell* claim (Count V) is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Entered this 8th day of July, 2025

_____
United States District Judge

9